**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | | |
|---|---|---|---|
| 1. | **JONETTA BOSTIC,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | |
| **v.** | | ) | **CIV-19-541-CVE-JFJ** |
| | | ) | |
| 1. | **CITY OF JENKS,** | ) | **ATTORNEY LIEN CLAIMED** |
| 2. | **CHRIS SHROUT, in his individual** | ) | **JURY TRIAL DEMANDED** |
| | **capacity as City Manager,** | ) | |
| 3. | **REBECCA STEWART, in her** | ) | |
| | **individual capacity as Assistant** | ) | |
| | **City Manager,** | ) | |
| 4. | **LISA BREWER, in her individual** | ) | |
| | **capacity as Human Resources** | ) | |
| | **Administrator,** | ) | |
| 5. | **TERESA NOWLIN, in her individual** | ) | |
| | **capacity as City Attorney, and** | ) | |
| 6. | **CAMERON ARTHUR, in his** | ) | |
| | **individual capacity as Chief of Police,** | ) | |
| | | ) | |
| | **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Jonetta Bostic, and for her Complaint in the above-

entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff,  Jonetta Bostic, is an adult female residing in Wagoner County,

Oklahoma.

2.      Defendants are:

a.      City of Jenks ("City"), a governmental entity doing business in and

1

around Tulsa County, Oklahoma;

      b.     Chris Shrout, in his individual capacity as City Manager for the City of Jenks;

      c.     Rebecca Stewart, in her individual capacity as Assistant City Manager for the City of Jenks;

      d.     Lisa Brewer, in her individual capacity as Human Resources Administrator for the City of Jenks;

      e.     Teresa Nowlin, in her individual capacity as City Attorney for the City of Jenks; and

      f.     Cameron Arthur, in his individual capacity as Chief of Police for the City of Jenks.

## JURISDICTION AND VENUE

3.     This cause of action arises out of Plaintiff's former employment with Defendant City and is based on the following claims: (a) gender discrimination, sexual harassment, the creation of a gender-based  hostile work environment, and retaliation for having engaged in protected opposition to gender discrimination/harassment in violation of Title VII; (b) failure to pay equal wages in violation of the Equal Pay Act; (c) religious discrimination, religious-based harassment, the creation of a religious-based hostile work environment and retaliation for having engaged in protected opposition to religious discrimination/harassment in violation of Title VII; (d) retaliation under 42 U.S.C. §2000e-

3(a) for the adverse actions taken against Plaintiff because of her opposition to unlawful sexual/gender-based and religious-based conduct and participation in proceedings concerning sexual/gender-based and religious-based harassment and discrimination; (e) age discrimination, age-based harassment, the creation of an age-based hostile work environment and retaliation for having engaged in protected opposition to age discrimination/harassment in violation of the Age Discrimination in Employment Act ("ADEA"); (f) retaliation under 29 U.S.C. §623(d) for the adverse actions taken against Plaintiff because of Plaintiff's opposition to unlawful age-based conduct and participation in proceedings concerning age-based harassment and discrimination; (g) disability discrimination, disability-based harassment, the creation of a disability-based hostile work environment and retaliation for having engaged in protected opposition to disability discrimination/harassment in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); (h) retaliation under 42 U.S.C. §12203(a) for the adverse actions taken against Plaintiff because of Plaintiff's opposition to unlawful disability-based conduct and participation in proceedings concerning disability-based harassment and discrimination; (i) retaliation for having requested reasonable accommodations in violation of the ADA and ADAAA; (j) violations of the Family Medical Leave Act, including FMLA interference and retaliation; (k) violations of the Fair Labor Standards Act ("FLSA"), including misclassification of employees, failure to pay overtime compensation, and retaliation for making good faith complaints of FLSA violations; (l) violation of Plaintiff's Fourteenth Amendment Right to

Equal Protection made actionable by 42 U.S.C. §1983; (m) violation of Plaintiff's First Amendment Right to Free Speech made actionable by 42 U.S.C. §1983; (n) wrongful discharge, in the form of a *Burk* tort, in violation of Oklahoma state law which prohibits terminating an employee for exercising a legal right or interest; (o) tortious interference with a contract; (p) tortious interference with a prospective economic business advantage; (q) violation of Plaintiff's Fourth Amendment right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures made actionable by 42 U.S.C. §1983; (r) failure to pay wages in violation of the Oklahoma Protection of Labor Act ("OPLA"); (s) intentional infliction of emotional distress; and (t) violation of the Open Records Act.

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5.      All of the actions complained of herein occurred in and around Tulsa County, Oklahoma. Tulsa County is located in the Northern District of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. § 1391.

6.      To the extent required, Plaintiff exhausted her administrative remedies. Plaintiff timely filed Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about May 8, 2018, and an Amended Charge of Discrimination on or about January 16, 2019. Plaintiff subsequently received by mail a right to sue letter

4

from the EEOC, dated on or about July 24, 2019.  This case is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.  Plaintiff also timely submitted a Notice of Governmental Tort Claim on or about January 15, 2019.  Plaintiff received no response, therefore, her tort claim was deemed denied on or about April 15, 2019.  And, Plaintiff has timely filed her Complaint within one hundred eighty (180) days from the date said tort claim was deemed denied.

## STATEMENT OF FACTS

7.     Plaintiff is an adult female born in January, 1965, making her over age forty at all times relevant hereto.

8.     Plaintiff was employed with the City for approximately four (4) years, from on or about August 18, 2014, until on or about June 21, 2018.  She was hired as the Assistant Finance Director/Deputy City Clerk and held this position throughout her tenure.

9.     Former-City Manager, Mike Tinker, and former Assistant City Manager, Randy Ewing, hired Plaintiff on the spot.  Tinker and Ewing said then-City Clerk/Deputy City Clerk Josh McCorkle was not strong in finance and the City needed a Certified Public Accountant ("CPA").  Plaintiff fit the bill.  With her credentials as a CPA and experience in government finance, Tinker and Ewing declared in the midst of the interview, "you're the one."

10.     Throughout her employment, Plaintiff was an outstanding employee.  As reflected in her job evaluations, she worked tirelessly, was genuinely interested in ensuring proper procedures were followed, and timely completed work projects.  At no time was she

disciplined for poor work performance.

11.     Despite her stellar work record, Plaintiff was unjustly written up for allegedly engaging in conduct inconsistent with policy, her pay was cut, and she was ultimately terminated without justification on or about June 21, 2018.

12.     Plaintiff was not given any reason for her termination. Rather, after nearly four (4) years of dedicated service, she was simply told by McCorkle and Assistant City Manager Rebecca Stewart that her employment "was not working out."

13.     Significantly, her termination came after she began complaining of certain unlawful activity, including *inter alia* that she was being subjected to harassment and discrimination based on her sex, age, religion, and disability.

14.     Plaintiff also complained that the City was violating the FLSA. And, she reported to the Oklahoma State Auditor and others that the City was mismanaging and failing to properly account for public funds.

15.     Her termination also came on the heels of her taking leave for certain medical conditions from which she suffered and encouraging others to exercise their right to request reasonable accommodations for disabilities from which they suffered.

16.     More specifically, a little more than six months after she was hired (i.e., in or around March 2015) and continuing throughout her tenure, McCorkle (who was Plaintiff's immediate supervisor) constantly yelled at Plaintiff and berated her. McCorkle also repeatedly stared at Plaintiff's breasts and was dismissive of her.

17.     For instance, when Plaintiff made recommendations about how to handle fiscal matters, McCorkle said he needed to check with outside-CPA Chuck Crooks (a male), rather than accepting guidance from Plaintiff (a female).

18.     McCorkle also excluded Plaintiff from meetings and refused to share information with her needed to do her job.  In comparison, McCorkle did not treat Plaintiff's younger and/or male co-workers in the same demeaning fashion.

19.     Plaintiff also began noticing older employees being forced out of their employment with the City and being replaced with younger workers.  In fact, in or around June 2017, McCorkle said he did not want to hire a female applicant because she was "kind of old."  This was so despite the fact that Plaintiff recommended McCorkle hire the woman, as she was the most qualified applicant.

20.     McCorkle also permitted younger and/or male employees to mistreat Plaintiff. For example, on one occasion (in or around September 2016), Seth Duck (a male in his 30s), who held a lower-level position than Plaintiff, responded "f*ck you," when Plaintiff asked him to do something.

21.     Offended, Plaintiff reported the matter to McCorkle.  However, McCorkle did not take any disciplinary action against Duck.  Instead, he called Plaintiff and Duck together, as though they held equal positions, and spoke with them about the matter, undermining Plaintiff's authority.

22.     McCorkle also failed to take remedial action when City Planner Robert Bell

(a male) made repeated sexual comments to Plaintiff and in her presence.

23.     That is, on nearly a weekly basis, for approximately 24 months (between in or around March 2014 to March 2016), Bell (who held a higher-level position than Plaintiff) made unwelcome and offensive sexual comments to Plaintiff about his girlfriend.

24.     Bell told Plaintiff how young his girlfriend was and made sexual implications. Plaintiff made known she was uncomfortable with Bell's comments.  Yet, Bell continued. And, McCorkle, who was present, failed to take remedial action.

25.     Plaintiff was also denied merit pay increases, despite receiving positive performance reviews, whereas her male and/or younger colleagues were afforded merit pay raises.

26.     Plaintiff was also paid less than her similarly-situated male co-workers, including but not limited to McCorkle throughout her employment.  This was so despite the fact that she and her male counterparts performed substantially equal work, requiring equal skill, effort and responsibility, and their jobs were performed under the same working conditions.

27.     The stress created by the unlawful treatment she was forced to endure aggravated and/or caused certain medical conditions from which Plaintiff suffered.  Such conditions included *inter alia*, Cervical Osteoarthritis, Degenerative Joint Disease, Fibromyalgia, Tourette Syndrome, Sjogren's Syndrome, Hashimoto/Hyper Thyroid Disorder, Major Depressive Disorder, Extreme Obsessive Compulsive Disorder, Attention

8

Deficit/Hyperactivity Disorder, Anxiety, Body Dysmorphic Disorder, and Inflammatory Bowel Disorder, in addition to being on the Autism Spectrum.

28.     As a result of these conditions, Plaintiff is/was a qualified individual with a disability, in that, she suffers/suffered from impairments which substantially limit/limited her ability to perform one or more major life activities, including, but not limited to her ability to speak, eat, walk, think, concentrate, and perform various physical tasks.

29.     Such conditions also cause/caused Plaintiff to suffer from chronic fatigue, joint pain, arthritis, and dry mouth.  Said conditions also impacted Plaintiff's internal bodily processes, including but not limited to her immune, musculoskeletal, gastrointestinal and neurological systems.

30.     Plaintiff also had/has a record of such disabilities and/or was regarded as having such disabilities.  At all relevant times though, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations**.**

31.     As a result of her medical conditions, Plaintiff notified the City in or around early-2016 that she was required to take intermittent medical leave to receive diagnostic and other medical treatment.

32.     Despite this, the City failed to inform Plaintiff of her right to leave under the FMLA.  Instead, her physician mentioned FMLA to her in or around May 2016, at which time Plaintiff submitted FMLA paperwork to the City.

33.     Upon submitting her paperwork, Plaintiff was approved for FMLA.  However,

9

the City instructed that Plaintiff had be out of vacation and sick time before she was "able to designate time off as FMLA." And, although she was classified as exempt and not subject to time-keeping requirements for overtime purposes, the City failed to enter an agreement with Plaintiff as to her normal work schedule or average weekly work hours, as required by the Department of Labor rules issued under the FMLA, 29 C.F.R. §825.500(f)(2).

34.     Plaintiff was also constantly bullied about the medical leave she took. By way of example, McCorkle mocked Plaintiff, saying such things as, "do you even work here anymore," when Plaintiff returned from absences due to her medical conditions.

35.     McCorkle also often made derogatory jokes and comments about Plaintiff's disabilities and the medications she took. By way of example, McCorkle laughed when Plaintiff (who suffers from body dysmorphia) mentioned going to Weight Watchers.

36.     McCorkle said Plaintiff was "so skinny" and "bony." He then told Plaintiff that she was "the brunt of the joke" during a holiday dinner with his family, stating his family "laughed and laughed" about her attending Weight Watchers. Plaintiff implored McCorkle to stop belittling her, but his conduct continued.

37.     McCorkle (known to be agnostic) also attacked Plaintiff's religious beliefs, making fun of her "ethics," telling her that she "didn't even know if there was really a Jesus," and continually using Jesus Christ's name in vain, despite Plaintiff stating she was offended by such comments.

38.     Based on the foregoing and other conduct, Plaintiff complained to Lisa Brewer,

10

HR Administrator, in or around late-June 2017, that she was being subjected to a "hostile work environment."

39.     The following month, on or about July 21, 2017, City Manager Chris Shrout issued a "Closure Report on Jonetta Bostic Hostile Work Environment/Discrimination Complaint," which he provided to Plaintiff, City Attorney Teresa Nowlin, and McCorkle.

40.     Therein, Shrout acknowledged Plaintiff raised complaints of harassment and discrimination under Title VII, ADEA and ADA.  Shrout also acknowledged that employees substantiated Plaintiff's complaints (including the fact that McCorkle made sarcastic and demeaning comments about Plaintiff's medical conditions, absences and medications).

41.     Despite this, Shrout summarily concluded the conduct about which Plaintiff complained was not based on any protected status and determined "that no formal disciplinary action against Mr. McCorkle [wa]s warranted with regard to [Plaintiff's] allegations."

42.     Days later, on or about July 27, 2017 (after choosing not to discipline McCorkle), Shrout wrote Plaintiff up.

43.     Shrout claimed that during the course of the investigation into Plaintiff's allegations against McCorkle, facts were revealed that Plaintiff allegedly engaged in conduct inconsistent with City policy.  The claimed basis for the write-up was pretext.

44.     McCorkle was found to have actually engaged in conduct violating City policy. Yet, he was not given any formal discipline.  Moreover, there was no investigation into the

11

supposed allegations against Plaintiff.  She was not told of the supposed allegations until she was written up, much less given an opportunity to respond.  And, she did not engage in the conduct, as she was accused.

45.     The write-up came not only after Plaintiff complained that she was being harassed and discriminated against, but also after reporting (to *inter alia* Shrout, Nowlin, Assistant City Manager Rebecca Stewart and McCorkle) that the City failed to properly account for public funds, including funds associated with the federal and state Department of Transportation ("DOT").

46.     In fact, on or about the day she was written up (i.e., on or about July 27, 2017), the City auditors were scheduled to meet with Shrout, McCorkle and Plaintiff about issues Plaintiff brought to their attention regarding the City not properly reporting DOT funds.

47.     Plaintiff complained the City was mishandling other public funds as well.  By way of example, Plaintiff  complained (to *inter alia* Shrout, Stewart and McCorkle) that the Jenks Aquarium Authority ("JAA"), operated by the City, was converting public donations and other funds that were supposed to be going to the Oklahoma Aquarium Foundation ("OAF"), a private, non-profit organization.  Plaintiff also complained that City employees were performing work for OAF, while being paid by the City (via taxpayer dollars).

48.     Plaintiff further complained (to *inter alia* Shrout, Stewart, Nowlin and Brewer) that employees were being improperly designated and paid as independent contractors, and that non-exempt employees were being misclassified in violation of the Fair Labor Standards

12

Act ("FLSA").

49.     In fact, Plaintiff, herself, was improperly treated and classified as an exempt employee. That is, Plaintiff was not employed in a bona fide executive, professional, administrative, outside sales or other capacity, exempting her from the overtime provisions of the FLSA, yet she was not paid for hours she worked in excess of 40 hours per week.

50.     After complaining of such unlawful acts, Plaintiff's requests for reasonable accommodations were denied.  That is, in or around October 2017, consistent with recommendations from her physician, Plaintiff asked to work from home one day per week due to her medical conditions.  However, on or about October 31, 2017, Stewart denied her request.

51.     Stewart said that instead of allowing Plaintiff to work from home, the City would limit the number of hours Plaintiff was required to work in the office to 40 hours per week, Monday - Friday, 8:00 a.m. to 5:00 p.m.  However, this was not an accommodation – these were typical office hours for all employees.  And, the duties Plaintiff was charged with required working more than 40 hours per week.

52.     Days after denying Plaintiff's request for accommodations, Stewart also wrote Plaintiff up for using FMLA.

53.     The write-up (dated November 3, 2017) claims Plaintiff worked while off on FMLA and states this is prohibited.  However, the reason for the write-up was baseless. Stewart also advertised Plaintiff's position as being open in or around January 2018 (while

Plaintiff was still employed by the City).

54.     Plaintiff complained to Shrout and Nowlin about the manner in which Stewart treated her (including *inter alia* Stewart denying her reasonable accommodations).  She also complained that other employee's requests for accommodations were also denied.  However, no remedial action was taken.  Thus, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC").

55.     She sent an email to the EEOC, carbon copying Nowlin, on or about March 15, 2018.  Therein, she complained that she was being discriminated and retaliated against.  She then filed a formal, Form 5 Charge of Discrimination on or about April 13, 2018.

56.     At around the same time, the City was also informed the State Auditor's office wanted to investigate issues Plaintiff brought to its attention about the City misusing public funds.

57.     After this, the City significantly cut Plaintiff's pay without explanation.  Until in or around March 2018, Plaintiff earned a gross amount of approximately $2,737.42 per pay period (as an exempt employee).  However, the paychecks she received thereafter were well below this amount, specifically:  $1,789.89 (on March 15, 2018); $1,600.38 (on March 29, 2018); $1,947.81 (on April 13, 2018); $1,300.33 (on March 30, 2018); $400.17 (on May 15, 2018); $1,837.26 (on May 31, 2018); and $1,537.21 (on June 15, 2018).

58.     Plaintiff was also issued a written counseling from Stewart on or about April 19, 2018.  Plaintiff was accused of yelling at employees and engaging in other disruptive

14

behavior.  However, the claimed basis for the write-up was pretext.

59.     Plaintiff did not engage in the acts as she was accused.  And, McCorkle was found to have actually engaged in the same type of conduct as Plaintiff was wrongfully accused, yet McCorkle was not disciplined.

60.     Then, approximately two months later, on or about June 21, 2018, Plaintiff was fired.

61.     Plaintiff was off work on FMLA June 20, 2018, and the morning of June 21, 2018.  Upon returning to work, Stewart called Plaintiff into a meeting, with her, McCorkle, Brewer and Chief of Police Cameron Arthur.

62.     McCorkle started the meeting, telling Plaintiff "this is not working out." Plaintiff asked McCorkle what he meant, but McCorkle did not respond.  Instead, Stewart simply repeated what McCorkle said.

63.     Plaintiff pressed for further explanation, but was given none.  She expressed she felt she was being retaliated against.  However, Arthur just responded that Plaintiff "needed to go" and escorted Plaintiff off the premises.

64.     Upon information and belief, Shrout, Nowlin, Stewart, Brewer and McCorkle participated in her termination decision.

65.     After she was fired, the City continued retaliating against Plaintiff.  By way of example, on or about September 13, 2018, Plaintiff drove to the City offices to make a COBRA payment.

15

66.     After arriving, while still in her car, Arthur and another officer, Jason (Last Name Unknown), approached Plaintiff and wrongfully accused her of being under the influence.

67.     Plaintiff was not impaired.  However, Arthur and the other officer refused to allow Plaintiff to leave.

68.     Arthur and the other officer demanded Plaintiff exit her vehicle and then began mocking her.  While collecting her belongings from her car, Arthur and the officer asked why Plaintiff "needed two drinks," (referring to the tea and water Plaintiff had in her car) and commented that Plaintiff was "obviously" impaired because she walked around her car to the passenger side to get her belongings.

69.     Arthur further taunted Plaintiff, saying to the other officer, "What do you think? Should we arrest her?"  Arthur then unjustly accused Plaintiff of being too impaired to drive, and said Plaintiff would have to have someone come get her.

70.     Arthur said he could tell Plaintiff was impaired by the way she was talking and by the look of her eyes.  Plaintiff explained she was not impaired, that her disabilities impacted her speech and affect, to which Arthur said "exactly, you should not be driving."

71.     While attempting to retrieve her phone from her purse, to contact her family to pick her up, Arthur and the other officer further mocked Plaintiff saying "you're so impaired you can't even get your phone out of your purse."

72.     And, on at least two occasions, when Plaintiff was speaking with her family

on the phone, Arthur forcibly grabbed Plaintiff's hand that was holding the phone, brought it toward his mouth and hollered: "She is impaired and not driving. You need to come pick her up."

73.     Officer Jason also unjustly issued Plaintiff a citation for alleged trespassing. And, upon her family members' arrival, Arthur announced "[Plaintiff] cannot drive in Jenks." He said unless she "drops it all," which Plaintiff understood to be her EEOC Charge and other complaints, "they would be watching for her."

74.     Weeks later Plaintiff was informed, by letter, that her license was suspended by the Department of Public Safety ("DPS").   Upon visiting DPS, Plaintiff learned the City falsely reported to DPS that she suffered from an impairment that precluded her ability to safely operate a motor vehicle.

75.     Plaintiff filed a formal complaint with the City, but was told by Arthur that her complaint would not be investigated, snidely stating she could just "add it to her EEOC suit." Arthur then said "this meeting is over," that Plaintiff and her elderly mother (who was also present) needed to "leave, right now!"

76.     At or around this same time, Plaintiff submitted an Open Records Request to the City, requesting documents relating to an investigation of the JAA.

77.     Days later, then-Records Clerk Malia Stoner responded saying, "[Nowlin] says the report does not exist."  However, upon information and belief, Nowlin's response was false – the City either destroyed the official documents or withheld them in violation of the

Open Records Act.

78.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I: Title VII (Gender)

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

79.     This count is asserted against Defendant City.

80.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination, harassment, hostile work environment, and retaliation.

81.     Plaintiff is entitled to relief under Title VII for gender discrimination because, Plaintiff is female; she was qualified for her job; she was terminated; and her job was not eliminated.

82.     Plaintiff is also entitled to relief under Title VII for sexual harassment and the creation of a sexually hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to conduct of a sexual nature; the conduct was unwelcome; and the conduct was sufficiently severe or pervasive to alter the terms, conditions or privileges of her employment.

83.     Plaintiff is further entitled to relief under Title VII for gender-based harassment and the creation of a gender-based hostile work environment, as looking at the

totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of her employment, and the harassment was gender-based or stemmed from gender-based animus.

84.     Plaintiff is also entitled to relief under Title VII for retaliation because Plaintiff engaged in protected opposition to sex-based discrimination and harassment; she suffered adverse actions subsequent to the protected activity; and a causal link exists between the protected activity and the adverse actions.

85.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by law.

## COUNT II: Equal Pay Act (Unequal Pay)

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

86.     This count is asserted Defendant City.

87.     The matters alleged above constitute violations of the Equal Pay Act.

88.     Defendant City paid different wages to employees of the opposite sex, Plaintiff, a female, in comparison with her male co-workers, including *inter alia* McCorkle.

89.     Plaintiff performed equal work on jobs requiring equal skill, effort, and responsibility as her male co-workers.

90.     Plaintiff's job and those of her similarly-situated co-workers were performed under similar working conditions.

91.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

## COUNT III: Title VII (Religion)

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

92.     This count is asserted against Defendant City.

93.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of religious discrimination, harassment, the creation of a religious-based hostile work environment and retaliation.

94.     Plaintiff is entitled to relief under Title VII for religious discrimination because she suffered adverse employment actions; at the time the actions were taken, her performance was satisfactory; and additional evidence, including *inter alia* the disparaging remarks made about her religion support the inference that the actions were taken because she did not share certain religious beliefs held by her supervisor (believed to be agnostic).

95.     Plaintiff is also entitled to relief under Title VII for religious-based harassment and the creation of a religious-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms conditions or privileges of her employment and the harassment and hostility stemmed from religious-based animus.

96.     Plaintiff is further entitled to relief under Title VII for retaliation because

20

Plaintiff engaged in protected opposition to religious discrimination and harassment; she suffered adverse actions subsequent to the protected activity and a causal link exists between the protected activity and the adverse actions.

97.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

### COUNT IV: Title VII (Retaliation)

For her fourth  cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

98.     This count is asserted against Defendant City.

99.     The matters alleged above constitute a violation of 42 U.S.C. 2000e-3(a) for retaliating against Plaintiff for her opposition to Defendant's unlawful sex- and religious-based employment practices and retaliating against Plaintiff for participating in proceedings concerning harassment and discrimination, including filing an EEOC Charge.

100.    As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

### COUNT V: ADEA

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

101.    This count is asserted against Defendant City.

102.    The matters alleged above constitute violations of the ADEA in the form of age

discrimination, age-based harassment, the creation of an age-based hostile work environment and retaliation.

103.    Plaintiff is entitled to relief under the ADEA because she was over the age of forty (40), was qualified for her job, was discharged and her job was not eliminated after her termination.

104.    Plaintiff is also entitled to relief under the ADEA for the creation of an age-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms conditions or privileges of her employment and the harassment and hostility stemmed from age-based animus.

105.    Plaintiff is further entitled to relief under the ADEA for retaliation because Plaintiff engaged in protected opposition to age discrimination and participated in proceedings concerning age-based harassment and discrimination; she suffered adverse actions subsequent to the protected activity and a causal link exists between the protected activity and the adverse actions.

106.    As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

## COUNT VI: ADEA (Retaliation)

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

107. This count is asserted against Defendant City.

108. The matters alleged above constitute a violation of 29 U.S.C. §623(c) for retaliating against Plaintiff for her opposition to Defendant's unlawful age-based employment practices and retaliating against Plaintiff for participating in proceedings concerning age-based discrimination, including filing an EEOC Charge.

109. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

## COUNT VII: ADA/ADAAA

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

110. This count is asserted against Defendant City.

111. The matters alleged above constitute disability discrimination, disability-based harassment, the creation of a disability-based hostile work environment, and retaliation in violation of the ADA and ADAAA.

112. More specifically, Plaintiff was a qualified individual with a disability, in that she suffers from impairments, described above, which substantially limited one or more major life activities, as set forth above. Further, Plaintiff's disabilities impact one or more of her internal bodily processes, as shown herein. And, Plaintiff had a record of disability and was regarded as disabled because she hand an actual or perceived impairment at the time Plaintiff was terminated.

113.    Despite her impairments, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

114.    Defendant denied Plaintiff reasonable accommodations.  And, Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

115.    Plaintiff is also entitled to relief under the ADA and ADAAA for the creation of a disability-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms conditions or privileges of her employment and the harassment and hostility stemmed from disability-based animus.

116.    Plaintiff is further entitled to relief under the ADA and ADAAA for retaliation because Plaintiff engaged in protected opposition to disability harassment and discrimination and participated in proceedings concerning disability-based harassment and discrimination; she suffered adverse actions subsequent to the protected activity and a causal link exists between the protected activity and the adverse actions.

117.    As damages, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

### COUNT VIII: ADA/ADAAA (Retaliation for Opposition to Discrimination)

For her eighth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

118.    This count is asserted against Defendant City.

24

119.   The matters alleged above constitute a violation of 42 U.S.C. §12203(a) for retaliating against Plaintiff for her opposition to Defendant's unlawful disability-based employment practices and retaliating against Plaintiff for participating in proceedings concerning disability-based harassment and discrimination, including filing an EEOC Charge.

120.   As damages, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

## **COUNT IX: ADA/ADAAA (Retaliation for Requesting Accommodations)**

For her ninth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

121.   This count is asserted against Defendant City.

122.   The matters alleged above constitute retaliation for having requested reasonable accommodations in violation of the ADA and ADAAA.

123.   Plaintiff is entitled to relief under the ADA and ADAAA because she is a qualified individual with a disability, as shown herein; she engaged in protected activity by requesting reasonable accommodations; she suffered adverse actions subsequent to the protected activity and a causal link exists between the protected activity and the adverse actions.

124.   As damages, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

## COUNT X:  FMLA

For her tenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

125.    This count is asserted against Defendants City, Shrout, Stewart, Brewer and Nowlin.

126.    The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the FMLA.

127.    Plaintiff was entitled to medical leave because she worked for Defendant City, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

128.    Defendants interfered with Plaintiff's rights under the FMLA by failing to notify Plaintiff of her rights under the FMLA and engaging in acts intended to have a chilling effect on Plaintiff's use of FMLA, including *inter alia* requiring Plaintiff exhaust her paid leave before using FMLA; failing to enter an agreement with Plaintiff as to her normal work schedule or average weekly work hours and bullying Plaintiff about her use of FMLA leave.

129.    Defendants also retaliated against Plaintiff for her use of FMLA leave by *inter alia* unjustly writing Plaintiff up, cutting her pay and terminating her employment. Defendants' actions were taken in response to Plaintiff's exercise of rights under the FMLA.

130.    As a direct and proximate result of Defendants' willful conduct, Plaintiff

suffered injuries and is entitled to recover all damages or other equitable relief allowed by law, including, but not limited to, lost wages, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT XI: FLSA

For her eleventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

131.    This count is asserted against Defendant City.

132.    The matters alleged above constitute violations of FLSA, including misclassification of employees, failure to pay overtime compensation, and retaliation for making good faith complaints of FLSA violations.

133.    At all relevant times, Defendant City, as a public agency, has been and continues to be an "employer" within the meaning fo the FLSA, 29 U.S.C. §203.  Plaintiff was an "employee" within the meaning of the FLSA.

134.    Throughout her employment, Plaintiff was paid a specified salary which was intended to compensate Plaintiff for forty (40) hours of work per week.  However, regularly worked beyond typical business hours (i.e., Monday - Friday, 8:00 a.m. to 5:00 p.m.), frequently working evenings and weekend.  In light of this Plaintiff consistently worked more than 40 hours per week.

135.    Plaintiff was not paid any overtime compensation despite the fact that she was required to work more than forty (40) hours per week and the majority of her hours were

spent performing non-managerial job duties.

136.   In fact, while her job summary reflected she served as a first-line supervisor for exempt and non-exempt employees, Plaintiff was not permitted to exercise supervisory authority.  She was not authorized to hire or fire employees.  And, the majority of her time was spent performing such functions as assisting in preparation of financial reports and other documents for required audits and performance of general ledger functions, including accounts payable, accounts receivables and other financial activities.

137.   Plaintiff was not employed in a bona fide executive, professional, administrative, outside sales or other capacity exempting her from the overtime provisions of the FLSA.  Defendant improperly treated and classified Plaintiff as an exempt employee.

138.   Defendant's failure to provide Plaintiff regular compensation, as well as overtime compensation at a rate not less than one and one-half her regular rate for hours worked over forty (40) hours in a workweek constitutes a violation of the FLSA, 29 U.S.C. §207.

139.   Defendant also failed to make, keep and preserve time records for each of its employees, including Plaintiff, sufficient to determine their wages, hours and other conditions and practices of employment in violation of the FLSA.

140.   Defendant's violations were knowing and willful.

141.   As damages, Plaintiff has suffered injuries and is entitled to recover all damages allowed by law, including, but not limited to, lost wages, past and future, and other

equitable and compensatory damages, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT XII: FLSA Retaliation

For her twelfth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

142.    This count is asserted against Defendants City, Shrout, Stewart, Brewer and Nowlin.

143.    The actions described above constitute retaliation in violation of the FLSA.

144.    Plaintiff is entitled to relief because she engaged in a protected activity (i.e., complaining that City employees were being improperly designated and paid as independent contractors, and that non-exempt employees were being misclassified as exempt employees); she was terminated, and a causal connection between her termination and protected activity exists.

145.    As damages, Plaintiff has suffered injuries and is entitled to recover all damages allowed by law, including, but not limited to, lost wages, past and future, and other equitable and compensatory damages, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT XIII: Fourteenth Amendment (Equal Protection)

For her thirteenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

146.    This count goes against Defendants City, Shrout, Stewart, Nowlin and Brewer.

147.    The individual Defendants are/were public employees at all relevant times hereto whose actions were made possible through the use and misuse of their authority as public employees.  The individually-named Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to equal protection.  Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

148.    Plaintiff's Fourteenth Amendment constitutional rights were clearly established at the time of the actions in question.  The actions of the Defendants were in deliberate indifference to the constitutional rights of Plaintiff.  Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

149.    The actions listed above have caused actual damages to Plaintiff as well as a physical, mental and emotional injury to Plaintiff.

150.    To the extent that the actions of the individual Defendants are deemed willful or deliberately indifferent, then punitive damages are available, and should be assessed against each such person.

### COUNT XIV:  First Amendment

For her fourteenth cause of action, Plaintiff incorporates all prior allegations and further alleges and state as follows:

151.     This count is asserted against Defendants City, Shrout, Stewart, Brewer and Nowlin.

152.     The individual Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to the freedom of speech.

153.     The matters alleged above were in violation of Plaintiff's First Amendment right to the freedom of speech which was clearly established at the time of the actions in question.  Plaintiff's comments as stated herein constituted comments on matters of public concern.  The actions of the Defendants were in deliberate indifference to the constitutional rights of Plaintiff.  Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

154.     The matters alleged above represent violations of Plaintiff's rights under the First Amendment, *inter alia*, which have caused actual damages as well as a physical, mental and emotional injury to Plaintiff.

155.     To the extent that the actions of any individual are deemed willful or deliberately indifferent, then punitive damages are available and should be assessed against each such person.

### **COUNT XV: *Burk* Tort**

For her fifteenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

156.     This count is asserted against Defendant City.

31

157.   The acts described above constitute a violation of Oklahoma's public policy, which prohibits wrongful termination and retaliation against whistle-blowers for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

158.   More particularly, Plaintiff was wrongfully discharged from her employment in retaliation for exercising her right to engage in Free Speech and for having acted consistently with a clear and compelling public policy to report and complaint about misuse of public funds as articulated in this state's decisional and statutory law, including *inter alia United States ex rel. Williams v. City of Elk City*, 2009 WL 10675671, *3 (W.D. Okla. Feb. 18, 2009) ("[e]stablished public policy restrains and forbids …misusing public funds[.]"); *Brewer v. Baptist's Inc.*, 2013 WL 5000933, *2 (W.D. Okla. Feb. 11, 2013) (recognizing allegations of "misuse of public funds" sufficient to support plausible *Burk* claim).

159.   Plaintiff has suffered injuries and is entitled to recover all damages or other relief allowed by state law, including, but not limited to, lost wages (past and future), emotional distress damages, costs and attorney's fees.

## COUNT XVI: Tortious Interference

For her sixteenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32

160. This count goes against Defendants Shrout, Stewart, Nowlin and Brewer.

161. The acts above-described constitute unlawful tortious interference with a contractual/employment relationship. Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with Defendant City. Defendants had no justification, excuse, or privilege for such interference.

162. Defendants made the decision to terminate Plaintiff's employment.

163. In doing so, Defendants were not acting to serve any legitimate or lawful interest of Defendant City, but were pursuing their own motives which included personal disregard for Plaintiff's federally protected rights.

164. Defendants' actions, in addition to not being legitimate, were not justified or privileged.

165. As a result, Plaintiff is entitled to all damages allowed by state law.

### COUNT XVII: Interference with Prospective Economic Advantage

For her seventeenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

166. This count goes against Defendants Shrout, Stewart, Nowlin and Brewer.

167. The acts above-described constitute unlawful interference with Plaintiff's prospective economic advantage.

168. Plaintiff had a reasonable expectation for profit in her employment with Defendant City.

169.     Defendants had knowledge of this relationship and/or expectancy.

170.     Defendants intentionally induced or caused a breach Plaintiff's expectancy.

171.     Such breach resulted in damage to Plaintiff.

172.     Defendants made the decision to terminate Plaintiff's employment.

173.     In doing so, Defendants were not acting to serve any legitimate or lawful interest of Defendant City, but were pursuing their own motives which included personal disregard for Plaintiff's federally protected rights.

174.     Defendants' actions, in addition to not being legitimate, were not justified or privileged.

175.     As a result, Plaintiff is entitled to all damages allowed by state law.

### COUNT XVIII: Violation of Okla. Stat. tit. 40 § 165.3

For her eighteenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

176.     This count is asserted against Defendant City.

177.     The acts described above constitute a failure to pay wages in violation of Oklahoma state law.

178.      As such, Plaintiff is entitled to recover all damages available under Oklahoma state law.

### COUNT XIX: Intentional Infliction of Emotional Distress

For her nineteenth cause of action, Plaintiff incorporates all prior allegations and

34

further alleges and states as follows:

179.    This count is asserted against Defendant Shrout, Stewart, Brewer, Nowlin and Arthur.

180.    The matters alleged above constitute the tort of the intentional infliction of emotional distress. The conduct of Defendants were extreme and outrageous and done with the intention of causing or with reckless disregard of causing Plaintiff severe emotional distress. Plaintiff did in fact suffer severe emotional distress as a result of Defendant's extreme and outrageous conduct.

181.    As the direct and proximate result of Defendant's actions, Plaintiff is entitled to all damages allowed by Oklahoma state law.

## COUNT XX: Open Records Act

For her twentieth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

182.    This Count is asserted Defendant City and Nowlin.

183.    The acts described above constitute a violation of the Open Records Act ("ORA"), Okla. Stat. tit. 51 §24A.1, *et seq.*

184.    The ORA expresses "the public policy of the State of Oklahoma that people are vested with the inherent right to known and be fully informed about their government." *See* Okla. Stat. tit. 51 §24A.2.

185.    To effectuate the purpose of the ORA, Okla. Stat. tit. 51 §24A.5 mandates that

"[a]ll records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction …."  As such, it imposes an affirmative and legally cognizable duty on Defendants to allow public access to the records within its custody, control, or possession.

186.    The ORA, Okla. Stat. tit. 51 §24A.5(6) mandates that a public body or official, such as, Nowlin "must provide prompt, reasonable access to its records."

187.    As of the time of filing this Complaint, Defendants City and Nowlin have denied prompt, reasonable access to records requested by Plaintiff.

188.    Pursuant to Okla. Stat. tit. 51 §24A.17(B), Plaintiff requests (a) declaratory relief in the form of an order declaring Defendants City and Nowlin violated the ORA by failing to provide prompt and reasonable access to public documents, and (b) injunctive relief in the form of an order for release of the records responsive to Plaintiff's open records request.

189.    Plaintiff further requests the Court award Plaintiff her reasonable attorneys fees pursuant to Okla. Stat. tit. 51 §24A.17(B)(2).

### COUNT XXI: Fourth Amendment

For her twenty-first cause of action, Plaintiff incorporates all prior allegations and further alleges and state as follows:

190.    This Count is asserted Defendants City and Arthur.

191.    Defendant Arthur was a public employee at all relevant times hereto whose

36

actions were made possible through the use and misuse of his authority as a public employee. Defendant Arthur was acting under the color of his authority in a manner which deprived Plaintiff of her Fourth Amendment constitutional right to be secure in her persons, houses, papers, and effects.  Therefore, Defendant Arthur is liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

192.    Plaintiff's Fourth Amendment constitutional rights were clearly established at the time of the actions in question.  The actions of Defendant Arthur were in deliberate indifference to the constitutional rights of Plaintiff.  Therefore, Defendant Arthur is liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

193.    The actions listed above have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

194.    To the extent that the actions of the individual Defendant are deemed willful or deliberately indifferent, then punitive damages are available, and should be assessed against each such person.

### COUNT XXII: 42 U.S.C. §1985(3)

For her twenty-second cause of action, Plaintiff incorporates all prior allegations and further alleges and state as follows:

195.    This Count is asserted Defendants Shrout, Stewart, Brewer and Nowlin.

196.    The actions above-described constitute violations of Plaintiff's rights under 42 U.S.C.§1985(3).

37

197.    Defendants Shrout, Stewart, Brewer and Nowlin conspired to deprive Plaintiff of her rights to equal protection and equal privileges;

198.    As shown herein, Defendants Shrout, Stewart, Brewer and Nowlin acted in furtherance of the conspiracy.

199.    The actions of Defendants Shrout, Stewart, Brewer and Nowlin have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

200.    Because the actions of Defendants Shrout, Stewart, Brewer and Nowlin were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, liquidated and punitive damages together with pre- and post-judgment interest, costs, attorney's fees, all other damages available under federal and Oklahoma state law, and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 9th DAY OF OCTOBER, 2019.**

s/Jana B. Leonard
**JANA B. LEONARD, OBA# 17844**
**SHANNON C. HAUPT, OBA #18922**
**LEONARD & ASSOCIATES,P.L.L.C.**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800        (telephone)**
**(405) 239-3801        (facsimile)**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

39